Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELVIN TEO, <br><br>                  Plaintiff, <br><br>       v. <br><br> CLEVELAND BIOLABS, INC., LEA VERNY, RANDY S. SALUCK, ALEXANDER ANDRYUSHECHKIN, DANIIL TALYANSKIY, ANNA EVDOKIMOVA, IVAN FEDYUNIN, HIGH STREET ACQUISITION CORPORATION, and CYTOCOM, INC., <br><br>             Defendants. | Case No.: <br><br> COMPLAINT FOR: <br><br> (1)  Breach of Fiduciary Duties <br> (2)  Aiding and Abetting Breach of Fiduciary Duties <br> (3)  Violation of § 14 (a) of the Securities Exchange Act of 1934 <br> (4)  Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br><br> DEMAND FOR JURY TRIAL |

Plaintiff, Melvin Teo ("Plaintiff"), by his attorneys, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Cleveland BioLabs, Inc. ("Cleveland BioLabs" or the "Company"), the Company's Board of Directors (the "Board" or the "Individual Defendants,"), Cytocom, Inc. ("Parent" or "Cytocom,"), and High Street Acquisition Corporation a wholly-owned subsidiary of the Company ("Merger Sub," and together with Cleveland BioLabs, Individual Defendants, and Cytocom, the "Defendants")) for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Cytocom through Merger Sub, as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on an all stock proposed transaction for an undisclosed valuation (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an October 19, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Cleveland BioLabs will become an indirect wholly-owned subsidiary of Parent, a subsidiary of the Cytocom. Plaintiff in his capacity as a Cleveland BioLabs public stockholder will receive, in exchange for each share of Cleveland BioLabs common stock owned, newly issued shares of Cytocom, such that when the deal is completed, the Company's shareholders interests will be significantly diluted – they will own only 39% of the combined company, while existing Cytocom shareholders will own the vast majority, or 61%, of the go-forward company.

3.      Thereafter, on February 16, 2021, Cleveland BioLabs filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      Plaintiff alleges that the Individual Defendants (defined herein) have breached their fiduciary duties by agreeing to the Proposed Transaction based on a flawed process which will result in inadequate compensation for Plaintiff in his capacity as a Company stockholder.  As such, Plaintiff is entitled to enjoin the Proposed Transaction or, alternatively, to recover damages in the event that the transaction is consummated.

5.      The dubious nature of the Proposed Transaction is laid bare considering the complete lack of merger consideration provided to Cleveland BioLabs stockholders.  Notably the only effect that the consummation of the Proposed Transaction will have on Plaintiff's shares of Cleveland BioLabs is to make them less valuable by diluting them.  Specifically, the entirety of the merger consideration will be composed of new stock of Cytocom after it is transformed from a non-public company into a public company through the Proposed Transaction.

6.      In addition, the Proposed Transaction is unfair and undervalued for a number of other reasons.  Significantly, the Registration Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" with the sole goal of a sale to Cytocom, and in which no other potentially interested third parties were contacted.

7.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Cleveland BioLabs without first taking steps to ensure that Plaintiff in his capacity as a Company public stockholder would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Cytocom without regard for Cleveland BioLabs' public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff and other Cleveland BioLabs stockholders.

8.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

9.     In violation of their fiduciary duties, Defendants caused to be filed the materially deficient Registration Statement on February 16, 2021 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in breach of Defendants fiduciary duties.   As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Cleveland BioLabs and Cytocom, provided by Cleveland BioLabs and Cytocom to the Special Committee of the Company Board's financial advisor Cassel Salpeter & Co., LLC ("Cassel Salpeter"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Cassel Salpeter and provide to the Company and the Board

10.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the breaches of fiduciary duties by Defendants.

## **PARTIES**

11.     Plaintiff is a citizen of Australia and, at all times relevant hereto, has been a Cleveland BioLabs stockholder.

12.     Defendant Cleveland BioLabs, a biopharmaceutical company, develops novel approaches to activate the immune system and address various medical needs in the United States and Russia.  Cleveland BioLabs is organized under the laws of Delaware and has its principal place of business at 73 High Street, Buffalo, New York.  Shares of Cleveland BioLabs common stock are traded on the New York Stock Exchange under the symbol "CLBI."

13.     Defendant Lea Verny ("Verny") has been a Director of the Company at all relevant times.  In addition, Verny serves as the Chairperson of the Company Board and a Member of the Audit Committee.

14.     Defendant Randy S. Saluck ("Saluck") has been a director of the Company at all relevant times.  In addition, Saluck serves as a Member of the Audit Committee.

15.     Defendant Alexander Andryushechkin ("Andryushechkin") has been a director of the Company at all relevant times. In addition, Andryushechkin serves as a Member of the Audit Committee.

16.     Defendant Daniil Talyanskiy ("Talyanskiy") has been a director of the Company at all relevant times.

17.     Defendant Anna Evdokimova ("Evdokimova") has been a director of the Company at all relevant times.

18.     Defendant Ivan Fedyunin ("Fedyunin") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 13 - 18 are collectively referred to as the "Individual Defendants."

20.     Defendant Cytocom is a clinical-stage biopharmaceutical company developing novel immunotherapies targeting autoimmune, inflammatory, infectious diseases and cancers based on a proprietary platform designed to rebalance the body's immune system and restore homeostasis. Cytocom is organized under the laws of Delaware and has its principal place of business at 2537 Research Blvd., Suite 201 Fort Collins, CO 80526. Cytocom's main equity partner, Immune Therapeautics, Inc. ("Immune"), has its common stock traded on the OTC Pink Sheets under the symbol "IMUN." On March 20, 2020, Immune released a Press Release "Immune Therapeutics, Inc…. announced the signing of a binding letter of intent to collaborate with Cytocom, Inc…. for the development of Lodonal™ and IRT-101 for use against COVID-19… Immune Therapeutics and Cytocom are planning to work with federal agencies to seek fast-track approval using Lodonal™ as a way to prevent or treat COVID-19 in high-risk groups who are infected with 2019-nCoV at clinical research centers across the country. IMUN is currently designing studies using Lodonal™ and IRT-101 as a monotherapy or in conjunction with other potential treatments." In addition, on June 9, 2020, Immune revealed that the Cytocom submitted an Investigational New Drug (IND) application to the U.S. Food and Drug Administration (FDA) to study CYTO-201 for the treatment of COVID-19.

21.     Defendant Merger Sub is a wholly-owned subsidiary of the Company created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23.     Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District and Cleveland BioLabs stock is traded on the NYSE which is located in this District

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

25.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Cleveland BioLabs and Plaintiff as a Cleveland BioLabs stockholder and owe the Company and Plaintiff the duties of due care, loyalty, and good faith.

26.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company and public stockholders of the Company such as Plaintiff.  To diligently comply with these duties, directors of a corporation must:

    a.     act with the requisite diligence and due care that is reasonable under
    the circumstances;

b.      act in the best interest of the Company and its stockholders such as Plaintiff;

c.      use reasonable means to obtain material information relating to a given action or decision;

d.      refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;

e.      avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and;

f.      disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the Company.

27.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Cleveland BioLabs, are obligated to refrain from:

a.      participating in any transaction where the directors' or officers' loyalties are divided;

b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders, including Plaintiff; and/or

c.      unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders, including Plaintiff.

28.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Cleveland BioLabs and Plaintiff in his capacity as a public stockholder of Cleveland BioLabs, including their duties of loyalty, good faith, and due care.

29.     As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for their Cleveland BioLabs common stock in the Proposed Transaction

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

30.     Cleveland BioLabs develops novel approaches to activate the immune system and address various medical needs in the United States and Russia. Its proprietary platform of toll-like immune receptor activators (TLR) has applications in mitigation of radiation injury, radiation oncology, and vaccines. The Company's product candidate is entolimod, an immune-stimulatory agent, which is used as a medical radiation countermeasure and other indications in radiation oncology. It is also developing Mobilan, a recombinant non-replicating adenovirus that directs expression of TLR5 and its agonistic ligand. The Company has strategic partnerships with the Cleveland Clinic, Roswell Park Cancer Institute, and Everon Biosciences.

31.     Cleveland BioLabs' stock price has risen exponentially over the last 52 weeks, being as low as $0.5 per share, reaching as high as $9.55 as recently as February 18, 2021.

32.     One reason for the Company's recent stock success is the potential of the drugs in its pipeline. Currently in its Phase II trials, Entolimod Biodefense is one of the promising drugs undergoing trials for the Company. Entolimod is in development as a countermeasure against death following total body irradiation. Acute radiation syndrome (ARS) results from damage to

hematopoietic, gastrointestinal, and other tissues due to high levels of radiation exposure, such as might occur following the explosion of a nuclear weapon. There are currently no FDA-approved treatments for ARS. According to the December 14, 2018 Buffalo Business First article, the Company received a $10.5 million investment in venture capital for the drug from Russian-Israeli billionaire Roman Abramovich. The article comments further on the reasoning behind the investment, "Genome Protection Inc. is a 50-50 joint venture by Cleveland BioLabs, which is focused on developing entolimod, a drug that combats the effects of radiation; and Everon, which develops anti-aging products. Both companies are contributing intellectual property to the project. 'The anti-aging field is one of the most rapidly advancing medical markets,' [Cleveland BioLabs CEO, Yakov Cogan] said. 'We believe that GPI's innovative drug candidates and a solid scientific foundation makes GPI from the moment of its inception a leading player among anti-aging biotech entities. This represents a unique opportunity for us to develop new and truly innovative drug candidates and create significant value for CBLI shareholders.'"

33.    In addition to Entolimod, a June 26, 2020 report revealed the Company joined the COVID-19 vaccine race using its SA-702 Vaccine Adjuvant, a new therapeutic approach with entolimod that employs the immunopotentiating properties of the drug together with alum (aluminum salts) as a vaccine adjuvant.

34.    Despite this upward trajectory and pharmaceutical potential, the Individual Defendants have caused Cleveland BioLabs to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

35.    As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual

Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to by any means necessary irrespective of the price obtained.

36.     Primarily, the Registration Statement gives no adequate explanation for why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than the dilution of the value of their shares.  That the Registration Statement does not explain why the Directors agreed to an all-stock transaction with a non-public entity is extremely concerning.

37.     Moreover, because the entirety of the Merger Consideration consists of Cytocom stock, and because Cytocom is not a public company, Plaintiff is unable to evaluate the value of the pro-forma entity (in which he will have a significantly diluted interest), the value of the Merger Consideration, or whether to vote in favor of the Proposed Transaction.

38.     In addition, as stated in more detail below, the Registration Statement provides no projection data for Cytocom, making an independent assessment of Cytocom's future value by Plaintiff all but impossible

39.     Notably the Registration Statement indicates that in addition to Cassel Salpeter, financial advisory firm of Rock Creek Advisors, LLC ("Rock Creek") was engaged by the Company during the sales process.  Despite this, the Registration Statement fails to provide any other relevant information regarding this engagement, including if Rock Creek provided a fairness opinion to the Company Board, what valuations or other work was done by Rock Creek relating to the sales process, and what compensation was given, or currently owed, to Rock Creek by the Company for this engagement.

40.     The Registration Statement is also unclear as to why multiple financial advisors were engaged during the sales process.

41.     In addition, the Registration Statement is also unclear as to the existence or nature of any non-disclosure agreement entered into between Cleveland BioLabs and any potentially interested third party, including Cytocom, as part of the sales process, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

42.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

**The Proposed Transaction**

43.     On October 19, 2020, Cleveland BioLabs and Cytocom issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **WINTER PARK, Fla., and BUFFALO, NY**, October 19, 2020 /PRNewswire/ -- Cytocom, Inc. (Cytocom), a leading biopharmaceutical company in the area of immune-modulation, and Cleveland BioLabs, Inc., (NASDAQ: CBLI), an innovative biopharmaceutical company developing novel approaches to activate the immune system, today announced that they have entered into a definitive merger agreement to combine their businesses in an all-stock transaction. Cytocom shareholders will have a majority position in the newly combined entity, which the parties anticipate will continue to be listed on the Nasdaq, and the initial Board of Directors for the combined company will consist of four members selected by Cytocom and three members selected by Cleveland BioLabs. The Boards of Directors of both companies have approved the combination.
>
> Each party to the proposed merger believes that the combined company will create near-term commercial opportunities in numerous areas of significant unmet medical needs including acute radiation injury, oncology, infectious disease, inflammation and autoimmune-mediated conditions, with multiple commercial, regulatory and clinical milestones expected over the next 12 to 18 months. Operating as "Cytocom, Inc." and under the leadership of Cytocom's experienced management team, the combined company will be positioned for consistent growth.
>
> **Overview**
>
> Michael K. Handley, President and Chief Executive Officer of Cytocom, stated, "Our merger with Cleveland BioLabs and its subsequent immune-focused

platform will be a transformative growth opportunity for Cytocom and Cleveland BioLabs shareholders. We believe that the combination of these highly complementary late-stage pipelines will strengthen our position and advance our efforts to unlock the potential of immune-modulating agents in the treatment of serious medical conditions. Further, this merger will enhance our ability to become a recognized leader in immune-modulating treatments and builds on the momentum created by our recent acquisition of ImQuest Life Sciences. We plan to utilize the combined platform to further drive value with additional clinical and commercial products and continue to seek strategic partnerships and acquisitions."

Dr. Andrei Gudkov, Chief Scientific Officer of Cleveland BioLabs, said: "This is an exciting day for Cleveland BioLabs and a great opportunity for our stockholders. The merger with Cytocom will allow us to add the strength of our science and bright perspectives associated with Entolimod development in cancer treatment and radiation defense arenas with a string of immunomodulators developed by Cytocom to form a powerful blend of conceptually and scientifically aligned products. We believe that the merger with Cytocom is the ideal way to unlock the value of our technology platform and our lead drug candidate, Entolimod, and I look forward to seeing this exciting new therapy advance through the clinic."

**Conditions**

The proposed transaction is subject to customary closing conditions, including approval by the stockholders of Cleveland Biolabs, the shares of the combined company being approved for listing on Nasdaq and a registration statement under the Securities Act becoming effective. Cytocom and Cleveland Biolabs expect the transaction to close during the first quarter of 2021.

### *The Inadequate Merger Consideration*

44.    Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration.

45.    First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company. The proposed valuation does not adequately reflect the intrinsic value of the Company. Moreover, the valuation does not adequately take into consideration the Company's potential future success.

46.     For example, the Company's stock price, as mentioned above, has shown exponential growth over the last 52 weeks, going from $0.50 per share to a recent February 2021 high of $9.55.

47.     Cytocom issued a letter to its shareholders after revealing the Proposed Transaction, saying:

> The merger with Cleveland BioLabs and the potential subsequent Nasdaq listing (contingent on meeting Nasdaq listing requirements) fit firmly with our vision to become a recognized leader in immune-modulating treatments targeting infectious diseases, including COVID-19, cancer, inflammation and autoimmune diseases, and further builds on our intended acquisition of ImQuest Life Sciences. We believe this transaction will enhance our visibility and exposure to the public markets, and by doing so will enable us to showcase the power of our drug development platform and our near-term clinical and commercial milestones to further generate shareholder value.
>
> Two lead investigative compounds developed using our proprietary platform — CYTO-201 for the treatment of Crohn's disease and CYTO-401 for the treatment of pancreatic cancer — are expected to enter Phase 3 clinical trials by the first quarter of 2021. A Phase 2 clinical trial for COVID-19 is expected to begin this year. We remain focused on advancing these drug candidates through the clinical trial process.
>
> Building on our growth strategy are the assets we will acquire from Cleveland BioLabs, as well as the drug development tools and services obtained with the acquisition of ImQuest Life Sciences. These two transactions represent a transformative growth opportunity, not only for Cytocom, but also for the shareholders of both Cleveland BioLabs and ImQuest Life Sciences.

48.     Cytocom shareholders are not the only parties benefitting from the Proposed Transaction. Cytocom's main equity partner, Immune Therapeautics, Inc., released a Press Release regarding the Proposed Transaction, which disclosed, "For Immune Therapeutics, Inc. (Ticker: IMUN) and its shareholders who hold a considerable stake in Cytocom this means that the value for all of the years of support and collaboration with Cytocom can be realized. The Cytocom

platform technologies and product pipeline, in combination with Cleveland BioLabs, have the potential to drive significant future growth in Immune's shareholder value."

49.    Unfortunately, Cleveland BioLabs investors will be highly diluted and not able to fairly take part in that success.

50.    It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for the Cytocom at the expense of Plaintiff and Cleveland BioLabs public stockholders, which clearly indicates that Plaintiff was not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

51.    The Merger Agreement contains certain provisions that unduly benefit the Cytocom by making an alternative transaction either prohibitively expensive or otherwise impossible. Notably, in the event of termination, the merger agreement requires Cleveland BioLabs to pay up to $300,000 to the Cytocom and/or its affiliates, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Cleveland BioLabs must pay this termination fee even if it consummates any competing Superior Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

52.    The Merger Agreement also contains a "Non-Solicitation" provision that restricts Cleveland BioLabs from considering alternative acquisition proposals by, *inter alia*, constraining Cleveland BioLabs' ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting,

initiating, proposing or inducing any alternative proposal, but permits the Board to consider an

unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to

a "*Superior Proposal*" as defined in the Merger Agreement.

53.     Moreover, the Merger Agreement further reduces the possibility of a topping offer

from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide to the Cytocom

and/or its affiliates information in order to match any other offer, thus providing the Cytocom

access to the unsolicited bidder's financial information and giving Parent the ability to top the

superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor

of the Cytocom.

54.     These provisions, individually and collectively, materially and improperly impede

the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and

pursuing other reasonable and more valuable proposals and alternatives in the best interests of the

Company and its public stockholders.

55.     Accordingly, the Company's true value is compromised by the consideration

offered in the Proposed Transaction.

***Potential Conflicts of Interest***

56.     The breakdown of the benefits of the deal indicate that Cleveland BioLabs insiders

are the primary beneficiaries of the Proposed Transaction, not Plaintiff or the Company's public

stockholders.  The Board and the Company's executive officers are conflicted because they will

have secured unique benefits for themselves from the Proposed Transaction not available to

Plaintiff and the public stockholders of Cleveland BioLabs.

57.     Notably, Company insiders, currently own large, illiquid portions of Company

stock that will be exchanged for the merger consideration upon the consummation of the Proposed

Transaction.  However, the Registration Statement only contains a blanket statement that Company Insiders own "approximately 1.03%" of the outstanding Cleveland BioLabs shares," without properly disclosing a breakdown of those ownership amounts, or the amount of merger consideration they entitle the Company insiders to.

58.     In addition, certain employment agreements with certain Cleveland BioLabs executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and Cleveland BioLabs common stockholders and will be paid out as follows:

**Golden Parachute Compensation**

| Name | Cash ($)[1] | Equity ($)[2] | Pension /NQDC ($) | Perquisites/Benefits ($)[3] | Tax Reimbursement ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| (a) | (b) | (c) | (d) | (e) | (f) | (g) | (h) |
| Michael Handley *Chief Executive Officer* | 837,000 | 3,239,375 | — | 28,939 | — | — | 4,105,314 |
| Cozette McAvoy *Chief Legal Officer* | 493,000 | 665,625 | — | 12,280 | — | — | 1,170,905 |
| Dr. Clifford Selsky *Chief Medical Officer* | 290,001 | 665,625 | — | 43,004 | — | — | 998,630 |

59.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

60.     Thus, while the Proposed Transaction is not in the best interests of Cleveland BioLabs or Plaintiff as a Company stockholder, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Registration Statement**

61.     On February 16, 2021, the Cleveland BioLabs Board and Cytocom caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation of the Exchange Act and their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

62.     Specifically, the Registration Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose**:**

     a.   Adequate reasoning as to why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than to have their shares diluted in value;

     b.   The specific reasoning as to why neither Cleveland BioLabs nor any of its financial advisors conducting any sort of market check for potentially interested third parties during the sales process;

c. The Registration Statement fails to give adequate information regarding the engagement of Rock Creek, or any other not specifically named financial advisor(s), including information regarding:

    i. What the specific role of Rock Creek, or any other not specifically named financial advisor(s), was in the sales process;

    ii. The analyses performed by Rock Creek, or any other not specifically named financial advisor(s), in connection with the Proposed Transaction;

    iii. How much compensation Rock Creek, or any other not specifically named financial advisor(s), was entitled to or has already received in compensation for its services throughout the sales process;

    iv. The amount of compensation owed to Rock Creek, or any other not specifically named financial advisor(s), contingent upon the consummation for the Proposed Transaction;

    i. Whether Rock Creek, or any other not specifically named financial advisor(s), has performed past services for any parties to the Merger Agreement or their affiliates, including the timing and nature of such services, and the amount of compensation received by each financial advisor for providing such services;

    ii. Why the engagement of additional advisors was necessary given that Cassel Salpeter was already engaged and provided a fairness opinion;

d. Sufficient information regarding the existence or nature of any non-disclosure agreement entered into between Cleveland BioLabs and any potentially

19

interested third party, including Cytocom, as part of the sales process, and if the terms of any such agreements differed from one another; and

b. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Materially Misrepresentations Concerning Cleveland BioLabs and Cytocom's Financial Projections*

63.    The Registration Statement fails to provide material information concerning financial projections provided by (or which should have bene provided by) Cleveland BioLabs and Cytocom management and relied upon by Cassel Salpeter in its analyses.

64.    The Registration Statement indicates that in connection with the rendering of Cassel Salpeter's fairness opinion, Cassel Salpeter reviewed, "certain other information and data with respect to Cleveland BioLabs and Cytocom made available to Cassel Salpeter by Cleveland BioLabs and Cytocom, including financial projections…"

65.    Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that Cleveland BioLabs and Cytocom management provided to the Board and Cassel Salpeter.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's

inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

66.     Notably, the Registration Statement provides no projection information whatsoever for Cytocom, despite Cassel Salpeter's statement that it relied on such projections to create its analyses.

67.     Similarly, no projections for Cleveland BioLabs itself was provided, despite Cassel Salpeter's statement that it relied on such projections to create its analyses.

68.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff was not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

69.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, Cytocom's true worth, the accuracy of Cassel Salpeter's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Cassel Salpeter*

70.     In the Registration Statement, Cassel Salpeter describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

71.     Notably, with respect to the valuation analyses done for Cleveland BioLabs, Cassel Salpeter appears to only have conducted a rudimentary analysis of the Company's trading prices over past three months without the use of any financial data of the company, whether past data or future projections, at all.  This indicates that no in depth valuation analyses based upon projection data of the Company (*e.g.* a discounted cash flow analysis) was performed at all.  Furthermore this rudimentary analysis also fails to provide the total number of shares outstanding (or other figure used) by which Cassel Salpeter used to determine the implied equity value of the Company based on the closing stock prices.

72.     With respect to the *Financial Analysis of Cytocom – Risk-Adjusted Net Present Value Analysis*, the Registration Statement fails to provide sufficient information regarding the following:

      a.   The risk-adjusted free cash flows of Cytocom;

      b.   The net present value of the risk-adjusted free cash flows of Cytocom;

      c.   The specific inputs and assumptions used to determine the discount rate range of 33.00% to 37.00% applied to the period through December 31, 2030;

      d.   The specific inputs and assumptions sued to determine the terminal growth rate range of (2.00%) to 2.00% applied; and

      e.   The specific inputs and assumptions used to determine the discount rate range of 58% to 62% applied to the period after December 31, 2030.

73.     With respect to the *Financial Analysis of Cytocom – Selected Companies Analysis*, the Registration Statement fails to provide sufficient information regarding the specific metrics for each selected company.

74.     These disclosures are critical for Plaintiff in his capacity as a Company stockholder to be able to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

75.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves his interests.   Moreover, without the key financial information and related disclosures, Plaintiff in his capacity as a Company public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests.   As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

## FIRST COUNT

## Claim for Breach of Fiduciary Duties

## (Against the Individual Defendants)

76.     Plaintiff repeats all previous allegations as if set forth in full herein.

77.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff in his capacity as a Company public stockholder.

78.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of his investment in Cleveland BioLabs.

79.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the Plaintiff in his capacity as a stockholder of Cleveland BioLabs by entering into the Proposed Transaction

through a flawed and unfair process and failing to take steps to maximize the value of Cleveland BioLabs to its public stockholders, including specifically, Plaintiff.

80.     Indeed, Defendants have accepted an offer to sell Cleveland BioLabs at a price that fails to reflect the true value of the Company, thus depriving Plaintiff of the reasonable, fair and adequate value of his shares.

81.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff in his capacity as a public stockholder of the Company all material information necessary for him to make an informed decision on whether to vote in favor of the Proposed Transaction.

82.     The Individual Defendants dominate and control the business and corporate affairs of Cleveland BioLabs, and are in possession of private corporate information concerning Cleveland BioLabs' assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and Plaintiff in his capacity as a public stockholder of Cleveland BioLabs which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

83.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff.

84.     As a result of the actions of the Individual Defendants, Plaintiff will suffer irreparable injury in that he has not and will not receive his fair portion of the value of Cleveland BioLabs' assets and has been and will be prevented from obtaining a fair price for his common stock.

85.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff, all to the irreparable harm of the Plaintiff.

86.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### Against Defendant Cleveland BioLabs, Cytocom, and Merger Sub

87.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

88.     Defendants Cleveland BioLabs, Cytocom, and Merger Sub knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

89.     As a result of this conduct, Plaintiff has been and will be damaged in that he has been and will be prevented from obtaining a fair price for his shares.

90.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

91.     Plaintiff repeats all previous allegations as if set forth in full herein.

92.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

93.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

94.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

95.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

96.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

97.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

98.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## FOURTH COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

99.     Plaintiff repeats all previous allegations as if set forth in full herein.

100.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

101.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements

were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

102. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Cleveland BioLabs' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

103. The Individual Defendants acted as controlling persons of Cleveland BioLabs within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Cleveland BioLabs to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Cleveland BioLabs and all of its employees. As alleged above, Cleveland BioLabs is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Proxy. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Cleveland BioLabs and obtain a transaction which is in the best interests of Cleveland BioLabs and its stockholders, including Plaintiff;

E.      Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 12, 2021                    **BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*